# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.H.**

**No. 18-0338** (Clay County 17-JA-24)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.H., by counsel Christopher G. Moffatt, appeals the Circuit Court of Clay County's February 22, 2018, order terminating his parental rights to B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael W. Ashbury Jr., filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of employing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 7, 2017, the DHHR filed an application for ratification of emergency custody alleging that petitioner and his wife had an altercation in which they hit one another in the face. Additionally, the children told the DHHR worker that both parents smoked marijuana in their presence. A truancy warrant was also issued for the parents because of the number of the children's unexcused absences from school.

On May 9, 2017, the DHHR filed an abuse and neglect petition against petitioner and his wife alleging that they engaged in domestic violence in the children's presence.[2] The petition specifically alleged that petitioner and his wife regularly engaged in acts of domestic violence, including arguing and hitting one another in the presence of the children. On one occasion, following an argument wherein petitioner grabbed his wife by the throat, petitioner used his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]In addition to B.H., petitioner's wife's child, J.W., also resided in the home. J.W. is not at issue in this appeal. Petitioner's wife is not B.H.'s mother; the child's mother is deceased.

1

vehicle to run his wife's vehicle off the road. The DHHR further alleged that petitioner and his wife had a history of substance abuse and used marijuana, methamphetamine, and Suboxone in the home, or in the presence of the children. Additionally, the DHHR alleged that petitioner mentally and emotionally abused the children by failing to protect them from domestic violence and substance abuse.

On May 15, 2017, the circuit court held a preliminary hearing, which petitioner waived. The circuit court ordered that petitioner remain drug and alcohol free and submit to random alcohol and drug screening. Petitioner requested visitation with the children, which the circuit court granted as long as he remained free of substances. On July 25, 2017, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations set forth in the petition. The circuit court found that he engaged in domestic violence in the children's presence, failed to provide a suitable home for the children, and abused controlled substances in the children's presence. It further found that his substance abuse affected his ability to properly parent. Accordingly, petitioner was adjudicated as an abusing parent.

On August 30, 2017, the circuit court held a dispositional hearing, which was continued. Petitioner was ordered to drug screen at the conclusion of the hearing, but left the courthouse without doing so. On September 27, 2017, the circuit court held a dispositional hearing, but the hearing was continued upon the motion of petitioner's wife's counsel. On November 15, 2017, the circuit court held a dispositional hearing. Petitioner did not appear, but was represented by counsel. The DHHR presented evidence that petitioner participated in parenting and adult life skills sessions sporadically and failed to attend a psychological evaluation. The circuit court continued the dispositional hearing and ordered that petitioner participate in parenting and adult life skills sessions and undergo a psychological evaluation including a substance abuse evaluation and a parenting evaluation.

On January 5, 2018, the circuit court held a dispositional hearing. Although petitioner arrived late to the hearing, he was represented by counsel throughout the entirety of the hearing. The circuit court took judicial notice of prior evidence, and the DHHR proceeded to present testimony. A psychologist from Saar Psychological Group testified that petitioner refused to accept responsibility for the conditions of abuse and neglect that led to the filing of the petition and that he recanted the admissions he made at the adjudicatory hearing. She further testified that petitioner became angry during the evaluation and left without completing it. The psychologist opined that petitioner's prognosis for improvement was "poor" because he did not believe that there was anything he needed to improve.

Next, a service provider from New Hope testified that petitioner stopped participating in services on June 11, 2017, and that, overall, he attended twenty-six parenting and adult life skills sessions and missed twenty-two sessions. He further testified that during sessions, petitioner wanted to focus on the failures of his attorney, Child Protective Services, and the circuit court. He opined that petitioner did not benefit from services because petitioner refused to acknowledge the abuse and neglect issues. The DHHR also presented the testimony of Lucy Cruickshank, the probation officer in Clay County and the administrator of petitioner's drug screens, who testified that petitioner tested positive for methamphetamine on May 9, 2017; June 21, 2017; and June 29,

2017. Petitioner testified that he would comply with an improvement period and blamed missing services on his recent move to Virginia.

In its order following the hearing, the circuit court found that petitioner failed to accept responsibility for the issues of abuse and neglect and that he failed to establish by clear and convincing evidence that he would comply with the terms and conditions of an improvement period. Further, the circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its February 22, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of employing a less-restrictive dispositional alternative.[4] In support, he argues that the psychologist and circuit court erroneously determined that "acceptance of responsibility is a prerequisite for successful completion of an improvement period." We disagree.

---

[3]According to the parties, the permanency plan for B.H. is adoption by his paternal grandparents.

[4]This Court would note that petitioner failed to provide the standard of review for abuse and neglect appeals or the applicable standards for improvement periods and termination of parental rights. Additionally, in his argument, petitioner failed to set forth even a single citation to the record, all in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error."

3

West Virginia Code § 49-4-610 provides that a parent may be granted an improvement period if "[t]he [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Petitioner failed to meet the burden to receive an improvement period because he could not demonstrate that he would be likely to comply with the terms and conditions of the same. While he argues that he would comply with the terms and conditions of an improvement period, if granted one, the record shows that petitioner failed to comply with the services offered to him throughout the proceedings. Petitioner failed to fully participate or benefit from the parenting and life skills sessions that he attended. Additionally, petitioner failed to complete his psychological evaluation, tested positive for substances on drug screens, and missed several screens. On one particular occasion, petitioner failed to comply with the circuit court's order to drug screen before leaving the courthouse following a hearing on August 30, 2017. Further, he was unable to participate in visitation with the child due to positive and missed screens. Based on this evidence, it is clear that petitioner did not meet the requisite burden to receive an improvement period.

Moreover, we have also explained that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).While petitioner argues on appeal that he took responsibility for his actions, it is clear from the record that petitioner denied any domestic violence, drug use, or abuse and neglect. The circuit court ultimately found that petitioner failed to take any "responsibility for [his] actions of abuse and neglect, even though [he] previously admitted to the same." Based on this evidence, petitioner failed to acknowledge the existence of any abuse and neglect issues, making an improvement period futile. Moreover, because the circuit court had discretion in deciding whether to grant petitioner an improvement period, we find that the circuit court did not err in denying petitioner the same.

Next, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation where there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical,

4

mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

As discussed above, petitioner denied any wrongdoing during the proceedings. Although he made admissions at adjudication, he later recanted them during his psychological evaluation. Due to his failure to acknowledge the conditions of abuse and neglect, the issues that led to the filing of the petition were not adequately addressed, as evidenced by his lack of participation in his parenting and adult life skills sessions and his failure to benefit from services. Petitioner missed nearly half of the sessions and stopped participating altogether in June of 2017. Additionally, petitioner was unable to participate in visitation with the child due to his positive and missed drug screens. However, he contests the admission of the drug screen results and argues that the circuit court erred in "admitting into evidence incompetent drug analysis testimony." In support, petitioner argues that the probation officer "was not qualified to speak to the chain of custody utilized by the laboratory, the testing or the testing results[.]" However, this Court has held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000). The probation officer testified regarding her experience in collecting petitioner's samples, the preliminary positive results, sending them to the laboratory for testing, and receiving the secondary test results from Alere Toxicology. Clearly, the circuit court found the probation officer's testimony credible and persuasive. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was in the child's best interests.

Further, while petitioner argues that the circuit court erred in terminating his parental rights instead of employing a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, termination of petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2018, dispositional order is hereby affirmed.

Affirmed.

5

**ISSUED**:  October 12, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating

6